Harry B. Frank, J.
This proceeding is brought by the Attorney-General of the State of New York under various statutes designed to protect the consumer against fraud and certain unfair selling practices.
The primary relief sought is for an order, pursuant to subdivision 12 of section 63 of the Executive Law, enjoining and restraining respondents from conducting their business in a persistently fraudulent and illegal manner and directing restitution to consumers who have done and are doing business with *1089 respondents. Petitioner, in addition, seeks an order, pursuant to section-133 of the General Business Law, enjoining the use by respondents- of different names and addresses which tend to mislead the public; an order annulling the certificate of authority of respondent Bevis Industries, Inc., to do business in the State of New York and for appointment of a temporary receiver pursuant to Business 'Corporation Law (§ 1101, subd. [a], par. [2]; § 109, subd. [a], par. [6]; § 109, subd. [b], par. [4]).
Subdivision 12 of section 63 of the Executive Law insofar as here pertinent provides as follows: “ 12. Whenever any person shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud or illegality in the carrying on, conducting or transaction of business, the attorney-general may apply, in the name of the people of the state of New York, to the supreme court of the state of New York, * * * for an order enjoining the continuance of such business activity or of any fraudulent or illegal acts * * * The word ‘ fraud ’ or ‘ fraudulent ’ as used herein shall include any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretence, false promise or unconscionable contractual provisions.”
The case is unusual in that no fraudulent intent is alleged on the part of respondents. Instead, what is charged are various acts, including failure to deliver merchandise which has been paid for within a reasonable time; misstatement of prices by representation that certain items were on sale when, in fact, they were not; implied representation that various items of merchandise were available for delivery when, in fact, they were not in stock or readily available for d'elivery; a failure to make prompt refunds on orders not fulfilled; shipment of merchandise after orders therefor had been canceled due to delay in fulfillment; and similar acts historically not illegal, although often condemned as sharp business practices.
Respondents, while admitting that many of these charges are true, have raised factual issues as to the intentional nature of these acts which would, in the ordinary course, be sufficient to warrant denial of the award of any summary remedy against them. These defenses can be characterized as admission of faults claimed inherent, and indeed endemic, in the affairs of large business operations, such as improper programming and operation of computers, breakdowns of personnel efficiency and procedures for various reasons, telephone service failure, the postal strike, a flood, and virtually all the other plagues save locusts.
*1090 The issue to be resolved herein is whether the “ fraud ” proscribed by section 63 of the Executive Law is restricted to the traditional concept of that term or includes, as petitioner contends, acts that go beyond those of the common cheat. In other words, whether the Legislature, by such section, intended to apply higher standards than heretofore to the market place, and whether this court should construe the statute in this light. While this case is one of first impression, petitioner points to the fact that the definition of “ fraud ” contained in such section is equivalent to the definition contained in section 352 of the General Business Law and that, in construing section 352 the Court of Appeals stated that ‘ ‘ the term [fraud] includes all deceitful practices contrary to the plain rules of- common honesty. ’ ’ And, further, that ‘ ‘ The words ‘ fraud ’ and ‘ fraudulent practice ’ in this connection should, therefore, be given a wide meaning so as to include all acts, although not originating in any actual evil design or contrivance to perpetrate fraud or injury upon others, which do by their tendency to deceive or mislead the purchasing public come within the purpose of the law.” (People v. Federated Radio Corp., 244 N. Y. 33, 38-39.)
The various complained of activities in.the instant proceedings would certainly fall within such broad definition and would, irrespective of considerations of motive, clearly have a tendency to deceive or mislead the purchasing public. To limit the ambit of subdivision 12 of section 63 solely to instances of intentional fraud in the strict traditional sense would be to ignore the realities of modern mass merchandising methods which extensively and impersonally utilize the communications media and mails to effect sales, rather than the face to face representations which characterized the transactions of earlier eras. In that light, and concluding that the Legislature intended to afford the public and consumers expanded protection from deceptive and misleading business practices, it must be found that the advertising of products for sale when there is no substantial probability of their delivery within a reasonable time of receipt of the order, although with the intent to deliver them at some indeterminate time, while not constituting fraud in the traditional sense' (absent proof of an express representation that delivery would be made by a specified date), is the sort of deceptive practice which is intended to be proscribed by subdivision 12 of section 63 of the Executive Law and is held to properly fall within the scope of such section. Similarly, excessive delay in making refunds when merchandise advertised and ordered is not available falls within the class of prohibited activities, as would the continued advertising of such unavailable merchandise or the *1091 shipment of goods after receipt of cancellations of the orders therefor. The advertising of merchandise as “on sale ” or at a reduced price when such has not been sold at the alleged original price within a reasonable time preceding the publication of such advertisement is likewise an activity that tends to mislead and deceive and would therefore fall within the statutory proscription. To the extent that difficulties exist or expenses must be incurred to meet the standards imposed by the statute for the benefit of the public, the onus lies upon those, such as respondents, to comply, since it is they who stand to profit thereby and who have initiated the process (see, generally, Matter of People v. Prestige Video Stores, 32 A D 2d 625).
The case of Association of Contr. Plumbers of City of N. Y. v. Contracting Plumbers Assn. of Brooklyn Queens (302 N. Y. 495) so heavily relied upon by respondents, is not apposite in, connection with subdivision 12 of section 63. That action was brought under section 964 of the Penal Law (the predecessor of section 133 of the General Business Law) entitled “Use of name or address with intent to deceive ’ ’ which section expressly required that such improper use be ‘ ‘ with intent to deceive or mislead the public ” in order to be actionable. Significantly, subdivision 12 of section 63 of the Executive Law contains no such similar requirement as to intent but, on the contrary, is concerned only with conduct — i.e. “ any person who shall engage in repeated fraudulent or illegal acts or otherwise demonstrate persistent fraud ” etc. (Italics supplied.)
With respect to section 133 of the General Business Law, however, intent would be an essential factor and insofar as the instant application seeks relief under such section it is denied both by virtue of the question raised with respect to the issue of intent and the failure on this application to sufficiently establish the allegedly misleading use of names and addresses.
The portion of the motion which seeks an order annulling respondent Bevis’ certificate of authority to do business in this State is also denied as is the application for the appointment of a receiver at this time. Triable issues of fact are present concerning whether the acts were intentional’ or so unfair as to warrant issuance of such drastic relief at this stage of the proceedings.
The proof clearly establishing, however, that respondents repeatedly engaged in various fraudulent acts within the contemplation of subdivision 12 of section 63 of the Executive Law, this application for an injunction is granted to the extent of restraining the respondents served from continuing to advertise and/or solicit orders for merchandise which is not available for *1092 reasonably prompt delivery; from delaying the making of refunds beyond a reasonable time or from advertising the making of prompt refunds when such are not fulfilled; from advertising refunds in a misleading manner with respect to shipping charges; from shipping merchandise when cancellation of the order therefor has been received in sufficient time to stop shipment ; and from advertising that merchandise is “on sale ’ ’ or “ reduced ” when such items have not been sold at the alleged original price within a reasonable time preceding the publication of the advertisement. Since respondents assert that virtually all of these acts have been discontinued, issuance of the injunction will certainly not prejudice them. The portion of the motion seeking restitution is granted to the extent of directing respondents to create a fund in an amount to be suggested on settlement of the order herein, which will be sufficient to insure refunds to all reasonably entitled thereto, and such order shall include agreement as to the mechanics thereof, failing which the court shall set the procedures to be followed.