Jacob Markowitz, J.
Motions numbered 135 and 136 of May 9, 1974 are consolidated and disposed of as follows:
This is a proceeding brought on behalf of .the People of the State of New York by the Attorney-General pursuant to subdivision 12 of section 63 of the Executive Law and section 7-107 of the General Obligations Law, to compel respondents, who are engaged in the business of renting housing accommodations, to place security deposits of their tenants in interest-bearing bank accounts as required by subdivision 2-a of section 7-103 of the General Obligations Law. Further, the Attorney-General seeks to compel respondent to pay interest on the security deposits to the tenant-owners from September 1, 1970 (the effective date of General Obligations Law, § 7-103, subd. 2-a) to the present. Respondents move to dismiss the petition for legal insufficiency.
Since September 1, 1970, owners of apartment dwellings of six or more units have been required to place .security deposits into interest-bearing accounts (General Obligations Law, § 7-103. *225 subd. 2-a). As of July 1, 1973, the Attorney-General was specifically empowered to .institute an action or proceeding to compel compliance with or to enjoin threatened violations of the laws regulating security deposits (General Obligations Law, § 7-107).
Respondents concede that they are required to place rent security deposits received from new tenants on new leases entered into after September 1, 1970, into interest-bearing bank accounts, but contend that they are not required to do the same with respect to pre-September 1, 1970 security deposits. Moreover, insofar as renewals of leases are concerned which provided for rent increases and concomitant increases in security deposits, respondents contend that their sole obligation runs only to the additional amounts deposited rather than as to the entire security deposit.
Prior litigation between the same parties involving the retrospective effect of the 1970 enactment of subdivision 2-a of section 7-103 of the General Obligations Law resulted in a split decision in the Appellate Division (Matter of State of N. Y. v. Parker, 38 A D 2d 542) which held that the plain wording of subdivision 2-a precluded retroactive application. The Court of Appeals affirmed (30 N Y 2d 964): u On the sole ground that the Attorney-General is without standing to maintain this proceeding”. (Emphasis supplied.) Significantly, dismissal was without prejudice to actions or proceedings by owners of the deposits or authorized public authority to compel compliance with subdivision 2-a.
Subsequent to this decision, section 7-107 of the General Obligations Law was enacted making the Attorney-General such authorized “ public authority ” as contemplated by the majority in the Court of Appeals.
It is noteworthy that section 7-107 imposes no new obligations on and grants no new rights to anyone. It is remedial in nature — designed to give the beneficiary under article 7 of the General Obligations Law an additional and perhaps more effective remedy. By its very terms it is applicable to past as well as future violations of article 7. The only significance of its effective date (July 1, 1973) is that after that date the hand of the Attorney-General was loosened. The section does not and appears not to have been intended to limit the People to policing only prospective violations of article 7.
Having reached the decision that section 7-107 may be retroactively applied, we must de novo consider whether the 1970 enactment (subd. 2-a) should be given similar effect. In this *226 regard, with great respect to the Appellate Division reversal (Matter of State of N. Y. v. Parker, 38 A D 2d 542, supra), the court adopts the reasoning in the decision of Mr. Justice Lane in the original proceeding (67 Misc 2d 36).
The language of the Court of Appeals in the earlier litigation is also persuasive in supporting the contention that retroactivity was intended, and, but for the defect in the fact that the proceeding was brought by an improper party, it would appear that it would have so held. Else why would the affirmance have rested on the ‘ ‘ sole ground ” of a defect in parties ? Moreover, since retroactivity had been argued before that court, would the decision have been made without prejudice to future action by proper parties if the court felt that the statute had only prospective effect?
This court agrees with the statement in the dissent of Judge Jasen (Breitel, J. concurring; both of whom felt that the Attorney-General then had power under the law to maintain the proceeding without the enabling legislation subsequently enacted) that “ Obviously, the Legislature intended to put an end to the nonsense of security deposit manipulation by landlords by requiring that all rent security be deposited in interest-bearing accounts. To construe the statute in any other way would clearly defeat the remedial purpose intended.” (30 N Y 2d 964, 966.)
Upon the basis of the foregoing, it is the opinion of this court that the statute as amended in 1970 clearly mandated that beginning ¡September 1, 1970, a landlord deposit rent security funds in interest-bearing accounts regardless of when the deposit was made.
The court’s attention has been called to the fact that subse-' quent to the institution of this proceeding respondents placed all rent security moneys in their possession in interest-bearing accounts. However, the voluntary discontinuance of unlawful practices does not restrict the court from enjoining such behavior (Matter of State of New York v. Person, 75 Misc 2d 252; Matter of People v. Baumann & Co., 56 Misc 2d 153) or enforcing compliance as of the effective date, September 1, 1970.
The petition is granted and the motion to dismiss is denied.